UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Zerorez Franchising System, Inc. and
HSK, LLC d/b/a ZEROREZ,

                Plaintiffs,                **MEMORANDUM OPINION
                                                      AND ORDER**
v.                                                          Civil No. 13-2326 ADM/BRT

Distinctive Cleaning, Inc. and
Jennifer Carr,

                Defendants.

_____

Michael H. Frasier, Esq., Rubric Legal LLC, Minneapolis, MN, on behalf of Plaintiffs.

Brooke C. Nelson, Esq., and Malcolm P. Terry, Esq., Bernick Lifson, P.A., Minneapolis, MN, on behalf of Defendants.

_____

## I.  INTRODUCTION

On February 29, 2016, the undersigned United States District Judge heard oral argument on Plaintiffs Zerorez Franchising System, Inc. (the "Franchisor" or "Zerorez") and HSK, LLC d/b/a ZEROREZ's ("ZEROREZ") (collectively, the "Plaintiffs") Second Motion for Summary Judgment on Profits, Damages, and Attorney Fees [Docket No. 100].  In its motion, Plaintiffs seek an award of $190,946.34 in damages, $266,338.73 in disgorged profits, $104,620 in attorney fees, and $6,313.57 in costs.  Distinctive Cleaning, Inc. ("Distinctive") and Jennifer Carr (collectively, the "Defendants") oppose the motion, arguing that material fact issues preclude awarding Plaintiffs' requested amounts.  For the reasons set forth below, Plaintiffs' motion is granted.

## II.  BACKGROUND

Only issues of damages remain in this trademark infringement action brought by national

cleaning company Zerorez and its Minnesota-based franchisee against Distinctive, a competing cleaning business, and its owner, Jennifer Carr. The Franchisor owns trademark and common law rights in the Zerorez name and has registered "Zerorez" as a trademark with the U.S. Patent and Trademark Office. Compl. ¶ 1. ZEROREZ has been offering carpet and surface cleaning services in the Twin Cities metro area since 2005. Id. ¶ 2. Distinctive is a corporation with its headquarters in Bloomington, Minnesota. Id. ¶ 3. Distinctive offers window cleaning, moving cleaning, post construction cleaning, carpet cleaning, and additional services. Terry Aff. [Docket No. 68] Ex. 1. Carr is Distinctive's owner and day-to-day manager. Compl. ¶ 4. The carpet cleaning services of ZEROREZ and Distinctive compete in the Minneapolis and St. Paul metropolitan areas. Id. ¶¶ 27–28.

On May 5, 2015, summary judgment was entered against Defendants on Plaintiffs' trademark infringement and false designation of origin claims. See Mem. Op. Order [Docket No. 84]; Zerorez Franchising Sys., Inc. v. Distinctive Cleaning, Inc., 103 F. Supp. 3d 1032 ("May 5th Order"). The remaining claims in Plaintiffs' Complaint [Docket No. 1] were dismissed.

**A. Infringement History**[1]

In 2012, ZEROREZ discovered online advertisements that included the phrase "Zero Rez." Id. ¶ 33. These advertisements included a hyperlink to Distinctive's website. Id. Plaintiffs alleged that Distinctive continued advertising its services with "zero rez" and derivative phrases despite receiving two cease and desist letters. Id. ¶ 39; Attach. 1.

---

[1] Only a summary of the infringement allegations are presented here. A more complete background is recited in the May 5, 2015 Order.

Plaintiffs filed suit on August 26, 2013, alleging violations of the Lanham Act and Minnesota consumer protection statutes. Just over a month after the lawsuit was filed, the parties stipulated that Distinctive and Carr shall not use the protected mark "zerorez" and similar phrases in its advertisements. See Stipulation [Docket No. 6].

In January 2014, Plaintiffs discovered that Distinctive was violating the terms of the Stipulation. First Frasier Decl. [Docket No. 18] ¶¶ 1, 2, 6. On February 28, 2014, Plaintiffs moved for a finding of contempt, which was granted on March 14, 2014. See Order [Docket No. 25]. After the discovery period concluded, Plaintiffs' motion for summary judgment was heard on February 24, 2015.

On May 5, 2015, this Court ruled as a matter of law that Defendants had committed trademark infringement, were liable on Plaintiffs' false designation of origin claims, and had committed trademark counterfeiting. See May 5th Order at 1040–1046. Carr, Distinctive's owner and day-to-day manager, was held to be personally liable for Distinctive's infringement. Id. at 1046. A permanent injunction was entered that enjoined Defendants from using "Zerorez" or other closely similar terms in its advertising. Id. at 1047–48.

Plaintiffs argued that they were also entitled to a financial recovery for damages occasioned by Distinctive's infringement. The May 5th Order concluded that Plaintiffs were entitled to economic remedies but required supplemental briefing before damages could be ascertained. Id. at 1049–50.

**B. Damages**

Plaintiffs' requested economic award is comprised of three parts. The first seeks recovery of sums Plaintiffs spent on radio and internet advertising to allegedly cure Distinctive's

infringing conduct. Second is to recover the profits Distinctive obtained from its carpet cleaning business while impermissibly advertising with Plaintiffs' trademark. Attorney fees and costs are the third portion of Plaintiffs' damages.

### 1. Corrective Advertising

Plaintiffs advertise their business on the radio and on the internet through Google AdWords ("AdWords").[2] Starting in June 2012, Plaintiffs aver they designed internet and radio advertisements to counter Distinctive's deceptive advertising.

Plaintiffs allege it spent $119,116.73 on internet advertisements between June 2012 through June 2014, and $82,062.34 of that amount was corrective. The corrective internet advertisement states: "Official ZEROREZ® Website," and includes the description "Patented Empowered Water™" and "For Clean You Can Trust." Kaplan Decl. [Docket No. 104] Ex. B. This is the only internet advertisement Plaintiffs purchased they contend is corrective.

Plaintiffs allege that between June 2012 and December 2013, they spent $108,884 on radio advertisements that were tailored to respond to Distinctive's infringement. In total, Plaintiffs claim they ran eleven radio advertisements that were corrective. The text of a June 2012 radio advertisement entitled "Buyer Be Ware Bargain Cleaners" is:

> Terri: Hey, it's Terri with Zerorez carpet care co-owner Michael Kaplan. And I have seen so many great deals on carpet cleaning, but they really aren't, are they Michael?
>
> Michael (on phone): you know Terri, we are all getting the online ads, the groupon and you know the print ads, the clean your whole house for nine bucks kind of stuff. Buyer beware. Do a little bit of research. Figure out exactly who you are hiring before you have the bargain basement discount cleaner come in.

---

[2] An explanation of AdWords can be found in 1-800 Contacts, Inc. v. Lens.com, Inc.,722 F.3d 1229, 1235-36 (10th Cir. 2013).

> We hear horror stories every day about cleaning gone awry. Do some due diligence. Zerorez has thousands of real customer reviews right on our website. Do a little bit of research and for a couple hundred bucks you can have Zerorez come out and zerorezify your carpet, and where you know it's clean and you get great service.

Kaplan Decl. Ex. C.

### 2. Profits

Plaintiffs contend that Distinctive grossed over $4.8 million while it was deceptively advertising its business. By using Distinctive's profit and loss statements, payroll records, and deposition testimony, Plaintiffs calculated that between $444,000 and $731,998 is attributable to Distinctive's carpet cleaning business.

### 3. Attorney Fees and Costs

Finally, Plaintiffs seek to recover $104,620 in attorney fees and $6,313.57 in costs.

## III. DISCUSSION

### A. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

The United States Supreme Court, in construing Federal Rule 56(c), stated in <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986):

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.
>
> On a motion for summary judgment, the court views the evidence in the light most

favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). However, the nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. Cnty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

If the nonmoving party presents evidence sufficient to permit a reasonable jury to return a verdict in its favor, summary judgment is inappropriate. Id. However, "the mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment. . . . Instead, 'the dispute must be outcome determinative under prevailing law.'" Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992) (citation omitted).

**B. Lanham Act**

The Lanham Act provides a flexible statutory remedial scheme. Upon establishing "a violation under section 1125(a)," Plaintiffs "shall be entitled . . . subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. §1117(a). In exceptional cases, an award of attorney fees may be also awarded to the prevailing party. Id. The Lanham Act also provides that monetary recovery for violation of the Act "shall constitute compensation and not a penalty." Id. Independent awards of damages and profits are permitted; a duplicative award is not. Wildlife Research Center, Inc. v. Robinson Outdoors, Inc., 409 F. Supp. 2d 1131, 1136 (D. Minn. 2005) (citing EFCO Corp. v. Symons Corp., 219 F.3d 734, 742 (8th Cir. 2000)).

The Lanham Act confers district courts with "wide discretion in determining a just amount of recovery for trademark infringement." Ramada Inns, Inc. v. Gadsden Motel Co., 804 F.2d 1562, 1564–65 (11th Cir. 1986). Further, "Lanham Act damages may be awarded even

when they are not susceptible to precise calculations." Id. at 1565.

Because Plaintiffs have already established Defendants' liability, consideration of profits, damages, and attorney fees is now appropriate. See May 5th Order.

**C. Corrective Advertising**

Plaintiffs argue that they are entitled to recoup their expenditures for advertisements purchased solely to correct the confusion arising from Distinctive's infringement. Defendants resist a damage award, stressing that Plaintiffs have failed to demonstrate any actual damages incurred due to Distinctive's infringement. Defendants also argue that Plaintiffs have failed to establish a nexus between the infringing conduct and the alleged damages.

**1. Legal Standard**

Corrective advertising is a recognized theory of damages in a trademark infringement action. See, e.g., Zazu Designs v. L'Oreal, S.A., 979 F.2d 499, 506 (7th Cir. 1992); Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co., 561 F.2d 1365, 1374–76 (10th Cir. 1977). "Corrective advertising is a remedy designed to 'counteract the public confusion' resulting from trademark infringement." Lurzer GMBH v. Am. Showcase, Inc., 75 F. Supp. 2d 98, 101 (S.D.N.Y. 1998) (citing Big O Tire, 561 F.2d 1365). "Plaintiff must prove both actual damages and a causal link between defendant's violation and those damages." Rhone-Poulenc Rorer Pharms., Inc. v. Marion Merrell Dow, Inc., 93 F.3d 511, 515 (8th Cir. 1996). "When assessing these actual damages, the district court may take into account the difficulty of proving an exact amount of damages from false advertising, as well as the maxim that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created." Porous Media Corp. v. Pall Corp., 110 F.3d 1329, 1336 (8th Cir. 1997) (quoting ALPO Petfoods, Inc. v. Ralston Purina Co., 913

F.2d 958, 969 (D.C. Cir. 1990) (quotations and citations omitted)).

Defendants' argument that Plaintiffs have failed to demonstrate actual damages is unpersuasive. That Plaintiffs' business prospered while Defendants illegally advertised its competing business does not bar Plaintiffs from recovering actual damages. Indeed, the cases cited by Defendants do not stand for such a proposition. See, e.g., Safco Prods. Co. v. Welcom Prods., Inc., 799 F. Supp. 2d 967, 994 (D. Minn. 2011) (noting that, even though "business was booming" it was the failure "to produce any evidence of sale lost" that precluded a damage award). The record includes specific examples of customers who were actually confused by Defendants' deception. As highlighted in the May 5th Order, Distinctive's call center manager "remember[s] receiving many reports of customers telling me they hired or contacted Distinctive Cleaning thinking it was Zerorez," and "remember[s] the call center receiving many calls complaining that they hired Distinctive Cleaning thinking it was Zerorez." Hicks Aff. [Docket No. 57] ¶¶ 3–4. Plaintiffs have demonstrated Distinctive's trademark infringement resulted in damages.

Defendants' argument that Plaintiffs have failed to demonstrate the necessary causal connection is also unpersuasive.[3] The authority cited by Defendants is either contradicted by the

---

[3] Defendants claim that because other carpet cleaning companies used Google AdWords campaigns with the Plaintiffs' trademark, the causal connection for recovering corrective advertising is further eroded. This argument misses the mark. As explained in the May 5th Order, Defendants' infringement is founded on Distinctive's use of Plaintiffs' trademark in the text of its advertisements, which is viewable to potential customers. The words and phrases used in Google AdWords campaigns are not viewable to potential customers and merely act to display specific advertisements when that word or phrase is used as a search term. See GOOGLE, https://support.google.com/adwords/answer/2497976?hl=en (last visited May 3, 2016). Because of the low likelihood of confusion resulting from merely employing trademarked phrases in a non-customer facing environment, such behavior does not constitute trademark infringement. See, e.g., 1-800 Contacts, Inc. v. Lens.com, Inc., 722 F.3d 1229 (10th Cir. 2013). Moreover,

record or inapposite.  For example, Defendants cite <u>3M Innovative Properties Co. v. Dupont Dow Elastomers LLC</u> for the proposition that Plaintiffs need to cite record evidence that directly ties lost sales by Plaintiffs to specific deceptive advertisements from Defendants to be awarded damages.  361 F. Supp. 2d 958, 973 (D. Minn. 2005).  That case, however, recognizes that different levels of proof are needed for non-comparative and comparative advertising cases.  <u>Id.</u> Because Defendants' deceptive advertising used the Zerorez name and specifically targeted Plaintiffs' business, Plaintiffs are not subject to the heightened level of proof as Defendants contend.  Indeed, the Eighth Circuit has approved a presumption of causation and injury in comparative advertising cases where there was intentional deception, as in this case.  <u>Porous Media</u>, 110 F.3d at 1334–37.  Plaintiffs are entitled to recover their corrective advertising expenses.

### 2. Damage Awards

#### a. Google AdWords

Plaintiffs claim that between June 1, 2012 through June 30, 2014, they spent $82,062.34 on internet-based corrective advertising through Google AdWords.  The online advertisement Plaintiffs claim was corrective states "Official ZEROREZ® Website" with the description "Patented Empowered Water™" and "For Clean You Can Trust."  Kaplan Decl. Ex. B.

Plaintiffs are not entitled to recover the full $82,062.34.  The only mildly corrective element of the advertisement is the phrase "Official ZEROREZ® Website."  The Court finds that Plaintiffs are entitled to recover ten percent of their requested amount, or $8,206, for online corrective advertising.  Ten percent is fair given the limited advertising space available in this

---

Plaintiffs did not pursue liability on this issue.  May 5th Order at 1043 n.4.

medium; a larger message that explicitly referenced Distinctive's infringement would likely be unwieldly.  Moreover, the record includes a screenshot showing the Zerorez advertisement positioned directly above a Distinctive advertisement that states "Zero Rez Carpet Cleaning."  Frasier Aff. [Docket No. 55] Ex. 1.  In this context, claiming to be "official" is marginally corrective and serves to remedy potential customer confusion.  For these reasons, Plaintiffs are entitled to a limited portion of its internet advertising expenditures.

### b. Radio Advertisements

Plaintiffs claim they are entitled to recover $108,884 they spent in corrective radio advertising.  Whether the radio advertisements are corrective is doubtful.  The advertisements do little to clear up any customer confusion resulting from Defendants' impermissible use of Plaintiffs' trademarks.  Rather, the advertisements claim that:  1) customers should research before hiring a discount carpet cleaning company; 2) only Zerorez cleans with Empowered Water; 3) other companies do not perform background checks or drug tests on its employees; or 4) other companies claim they are "green" and clean with "no residue."  See Kaplan Decl. Exs. C, E, G, I, K, M.

Telling customers to research before they hire is not, for purposes here, corrective advertising.  This message merely urges consumers to read customer reviews to ensure that they are calling a legitimate company.  There is no suggestion in these advertisements that customers should read the reviews because the Zerorez trademark is being misappropriated, nor do these advertisements suggest companies are masquerading as Zerorez or trying to pawn off cleaning services that are exclusive to Zerorez.  Rather than being corrective, these advertisements are self promotional.  For similar reasons, stating that only Zerorez uses Empowered Water is

promotional, not corrective. These advertisements do not explicitly claim that other companies are impermissibly using the Empowered Water trademark or indicate that competing businesses are trading on Zerorez's intellectual property. These advertisements in no way "'counteract the public confusion' resulting from [Distinctive's] trademark infringement." Lurzer GMBH, 75 F. Supp. 2d at 101 (citing Big O Tire, 561 F.2d 1365).

Likewise, advertising that one's company does, and that other companies do not, perform background checks is also not corrective. Claiming to provide a heightened level of service over the competition is typical promotion and does nothing to correct Defendants' trademark infringement. The same is true for the last series of advertisements. Insisting that only Zerorez truly employs a "no residue" cleaning method is promoting a competitive advantage rather than correcting trademark infringement.[4]

Because the radio advertisements Plaintiffs claim are corrective are wholly promotional, Plaintiffs are not entitled to recover any of the requested $108,884 as corrective radio advertising damages.

**D. Profits**

Plaintiffs argue that they are entitled to an award of $266,338.73 in disgorged profits. Defendants respond that Plaintiffs have failed to demonstrate Distinctive's sales related to infringing Plaintiffs' trademarks, therefore, summary judgment is improper.

---

[4] Plaintiffs claim they are entitled to recover for the July 2013 radio advertisement entitled "No Residue" in part because it states that "And it's funny how every carpet cleaner seems to promote their own 'no residue' pitch these days, but there's only one Zerorez." Kaplan Decl. Ex. K. Plaintiffs, however, do not own any trademark over the phrase "no residue." This is underscored by the parties' Stipulation that expressly allowed Defendants to advertise with the phrase "no residue." See Order [Docket No. 7].

**1. Legal Standard**

"The Lanham Act contemplates that a disgorgement or accounting of profits may be appropriate to remedy unfair infringement." Masters v. UHS of Del., Inc., 631 F.3d 464, 471 (8th Cir. 2011) (citing 15 U.S.C. § 1117(a)). "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 17 U.S.C. § 1117(a). "The plaintiff has only the burden of establishing the defendant's gross profits from the infringing activity with reasonable certainty." Lindy Pen Co., Inc. v. Bic Pen Corp., 982 F.2d 1400, 1408 (9th Cir. 1993). The infringer has the burden to "isolate the profits which are attributable to the use of the infringing mark." Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co., 316 U.S. 203, 206–07 (1942).

**2. Analysis**

Plaintiffs contend that Distinctive grossed $4.8 million during the infringement period. From this amount, Plaintiffs apply three methods to ascertain gross revenue figures for Distinctive's carpet cleaning business. The first, using Carr's testimony that 15% of Distinctive's revenue comes from carpet cleaning, yields $731,000 in revenue. The second method, using Distinctive's profit and loss statements for its carpet cleaning business, results in gross carpet cleaning revenue of $444,000. Finally, $485,000 in gross carpet cleaning revenue is obtained by extrapolating from payroll records.

Recognizing that each method suffers from some degree of imprecision, Plaintiffs submit that for purposes here, $444,000 is an appropriate figure to use as Distinctive's carpet cleaning gross profits. While Defendants argue that the imprecision of the numbers results in a disputed fact issue, the Court agrees with Plaintiffs that $440,000, the lowest of the three methods, is a

suitable sum. Plaintiffs have demonstrated, using documents Defendants produced in discovery, Distinctive's gross profits with reasonable certainty.

Since Plaintiffs have satisfied their initial burden, it is the Defendants that must demonstrate operating costs that are to be deducted from the sales revenues. Tonka Corp. v. Tonk-A-Phone, Inc., 805 F.2d 793, 794 (8th Cir. 1986). While Plaintiffs take issue with Defendants' efforts to prove deductions, Plaintiffs have agreed to deduct payroll expenses totaling $177,662.27. Defendants have presented no convincing argument that this figure is too low or that another figure should be substituted. Plaintiffs are thus entitled to $266,338.73 in disgorged profits. This amount sufficiently compensates Plaintiffs for Defendants' willful infringement without penalizing Defendants for their unauthorized use of Plaintiffs' trademark.[5]

## E. Attorney Fees and Costs

### 1. Attorney Fees

#### a. Legal Standard

The starting point for determining reasonable attorney fees is the "lodestar" calculation,

---

[5] Plaintiffs also argue that they are entitled to treble damages due to Defendants' trademark counterfeiting. Under the Lanham Act, trebling damages or profits against trademark counterfeiters is required unless extenuating circumstances exist. 15 U.S.C. § 1117(b). The May 5th Order determined that trebling was not warranted and nothing new has been presented to alter that decision. While "extenuating circumstances" is to be narrowly construed, that determination is made on a case by case basis, and such awards are still limited by equitable considerations. Lindy Pen, 982 F.2d at 1409. "Where the defendant is an 'unsophisticated individual, operating on a small scale, for whom the imposition of treble damages would mean that he or she would be unable to support his or her family' treble damages may be inappropriate." Microsoft Corp. v. CMOS Techs., Inc., 872 F. Supp. 1329, 1339 (D.N.J. 1994) (quoting Joint Explanatory Statement, 130 Cong.Rec.H. 12,076 at 12,083 (Oct. 10, 1984)). Defendants' financial struggles are well-documented and are boldly underscored by Jennifer Carr's personal bankruptcy and Distinctive's dissolution. See In re: Jennifer R. Carr, No. 15-31743 (Bankr. D. Minn. 2015). The Court finds this is a case where treble damages are inappropriate.

which multiplies the number or hours reasonably expended on the litigation by a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Bywaters v. United States, 670 F.3d 1221, 1228–29. A reasonable hourly rate considers the rates commonly charged by attorneys for similar work in the forum court. Bywaters, 670 F.3d at 1228. In calculating a reasonable fee amount, courts should exclude hours that were not "reasonably expended," such as excessive or redundant hours or instances where overstaffing or poor billing judgment has occurred. Hunsley, 461 U.S. at 434.

### b. Reasonableness of Fees

Plaintiffs seek a total attorney fee award of $104,620. This amount reflects the work performed by two attorneys for a total of 357.2 hours over the course of this litigation. Lead Plaintiffs' counsel Michael H. Frasier, who has been licensed since 2007, performed 350.6 hours of work at a billable rate of $275.00 per hour. Second Frasier Decl. [Docket No. 102] ¶ 5; Ex. 7. Supporting attorney Chad A. Snyder, who has been practicing in federal court since 2000, performed 6.6 hours of work at $275.00 per hour. Snyder Decl. [Docket No. 103] ¶ 5. Finally, paralegals Carolyn Chambers and Janice Vochoska performed 99.4 hours of work at $100.00 per hour. Id. ¶ 6. The total application amount of $104,620 results from subtracting $3,410 in attorney time and $140 in paralegal time for work associated with cross motions to compel, where fee requests were made and denied.

Defendants do not challenge the hourly rates of Plaintiffs' counsel or its paralegals and the Court finds the rates reasonable. Defendants do, however, present four arguments supporting their contention that Plaintiffs' attorney fee application must be reduced. First, Plaintiffs' rejection of early settlement offers unnecessarily drove up the cost of litigation. Second,

Plaintiffs' application includes block time entries that are impermissibly vague. Third, Plaintiffs' application includes duplicative charges. Finally, some of Plaintiffs' billing entries are unreasonable and excessive.

Defendants' contention that Plaintiffs' rejection of early settlement offers warrants a significant reduction is unpersuasive. Although the parties were able to agree on equitable terms to avoid further infringement shortly after the Complaint was filed, the parties were unable to agree on compensatory relief. That Plaintiffs refused to settle without receiving any payment is not evidence of bad faith or of Plaintiffs unnecessarily increasing the cost of litigation, especially since Plaintiffs prevailed at summary judgment and obtained a ruling that Defendants' trademark infringement was exceptional.

Defendants' argument about block time entries does not fare any better. While imprecise billing may warrant a reduction, block billing rises to imprecision when the application cannot be adequately reviewed for excessive, redundant, or otherwise unnecessary hours. H.J. Inc. v. Flygt Corp., 925 F.2d 257, 260 (8th Cir. 1991). The block time entries Defendants highlight are sufficiently clear and do not warrant reduction.

Defendants also complain that Plaintiffs' application includes instances of duplicative charges that should be stricken. For example, attorney Frasier and paralegal Vochoska each billed five hours of time to attend Jennifer Carr's deposition. This, however, in and of itself, is not duplicative billing that needs to be stricken. See, e.g., Williams v. ConAgra Poultry Co., 113 Fed. Appx. 725, 728 (8th Cir. 2004) (concluding that because it was reasonable for two attorneys to attend mediation, prevailing party was entitled to recover attorney and travel fees for both attorneys). After reviewing the billing records, there are no "duplicative charges" that need to be

stricken.

Defendants' final argument in support of reduction has some merit.  First, Defendants are correct that billing records related to Defendants' counsels' motion to withdraw and Plaintiffs' motion to compel are not recoverable.  Accordingly, the bill will be reduced by $2,612.50.  Second, some of Plaintiffs' billing entries reflect an unreasonable and excessive amount of time worked.  Although proving trademark infringement is never a simple task, Plaintiffs' case was strong and the evidence reflected that Defendants' infringement was willful.  With that as a backdrop, some time entries are facially unreasonable.  For example, on May 13, June 16, and September 22, 2014, attorney Frasier spent over 14 hours reviewing Google AdWords spreadsheets.  Over 20 hours of attorney time was billed in preparation for Distinctive's 30(b)(6) deposition, which lasted four hours, and nearly 50 hours of attorney time was billed towards drafting the summary judgment motion.

Therefore, after closely reviewing Plaintiffs' fee application, a 10% reduction of eligible attorney and paralegal fees is warranted to correct for excessive hours.  This 10% reduction serves the interests of justice and results in a reasonable award.  Plaintiffs are awarded $91,806.75 in attorney fees.

**2.  Costs and Expenses**

Plaintiffs argue they are entitled to recover $6,313.57 in costs associated with this action.  After reviewing the cost application, except for one $37.00 payment for courthouse service that was included twice, the requested costs and expenses are reasonable.  Plaintiffs are therefore entitled to $6,276.57 in costs and expenses.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs Zerorez Franchising System, Inc. and HSK, LLC d/b/a ZEROREZ's Second Motion for Summary Judgment on Profits, Damages, and Attorney Fees [Docket No. 100] is **GRANTED**;

2. Defendants Distinctive Cleaning, Inc. and Jennifer Carr shall jointly and severally pay Plaintiffs:

    a. $8,206 in corrective advertising;

    b. $266,338.73 in disgorged profits; and

    c. $91,806.75 in attorney fees and $6,276.57 in costs.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

                                              BY THE COURT:

                                              s/Ann D. Montgomery
                                              ANN D. MONTGOMERY
                                              U.S. DISTRICT JUDGE

Dated: May 6, 2016.